Slip Op. 14- 40

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| THE FLORIDA TOMATO EXCHANGE,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED STATES,<br><br>  Defendant,<br><br>  and<br><br>CAADES SINALOA, A.C., CONSEJO AGRICOLA DE BAJA CALIFORNIA, A.C., ASOCIACION MEXICANA DE HORTICULTURA PROTEGIDA, A.C., UNION AGRICOLA REGIONAL DE SONORA PRODUCTORES DE HORTALIZAS FRUTAS Y LEGUMBRES, CONFEDERACION NACIONAL DE PRODUCTORES DE HORTALIZAS,<br><br>  Defendant-Intervenors. | Before: Richard K. Eaton, Judge<br><br>Court No. 13-00148 |

**OPINION and ORDER**

[Plaintiff's motion to strike is denied.]

Dated: April 11, 2014

*Terence P. Stewart*, *Geert De Prest*, *Patrick J. McDonough*, and *Nicholas J. Birch*, Stewart and Stewart, of Washington, D.C., for plaintiff.

*Mikki Cottet*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington D.C., for defendant. With her on the brief were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White, Jr.*, Assistant Director. Of counsel on the brief was *Rebecca Cantu*, Senior Attorney,

Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, of Washington, D.C.

    *Thomas B. Wilner*, *Robert S. LaRussa*, and *Bryan Dayton*, Shearman & Sterling LLP, of Washington, D.C., for defendant-intervenors.

    EATON, Judge: This matter is before the court on plaintiff The Florida Tomato Exchange's ("plaintiff" or the "FTE") motion to strike certain exhibits and arguments from Defendant-Intervenors' Response to Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record (ECF Dkt. No. 40). Pl.'s Mot. to Strike Portions of the Def.-Ints.' Br. 1 (ECF Dkt. No. 47) ("Pl.'s Mot. to Strike"); *see* Pl.'s Rule 56.2 Mot. for J. on the Agency R. (ECF Dkt. No. 30) ("Rule 56.2 Mot."). Plaintiff claims that, because the exhibits were not presented to the Department of Commerce ("Commerce" or the "Department") in the underlying administrative proceedings, they are not part of the administrative record, and as a consequence cannot be considered by the court. Pl.'s Mot. to Strike 1. Defendant-intervenors argue that the material plaintiff seeks to strike is needed in order for defendant-intervenors to make their judicial estoppel claim. Def.-Ints.' Resp. to Pl.'s Mot. to Strike 2–3 (ECF Dkt. No. 48). According to defendant-intervenors, plaintiff is making arguments before the court that are contrary to the positions it took in prior proceedings before Commerce and the ITC, and that the doctrine of judicial estoppel prohibits these arguments from being made. Def.-Ints.' Resp. to Pl.'s Mot. to Strike 1–3. Thus, because they insist that the material proves their judicial estoppel claim, defendant-intervenors oppose plaintiff's motion. For the reasons that follow, plaintiff's motion is denied.

## BACKGROUND

On April 25, 1996, the Department initiated an antidumping investigation of imports of fresh tomatoes from Mexico. Fresh Tomatoes From Mexico, 61 Fed. Reg. 18,377, 18,377 (Dep't of Commerce Apr. 25, 1996) (initiation of antidumping duty investigation). On November 1, 1996, following a preliminary injury finding by the International Trade Commission ("ITC"), Commerce preliminarily determined that fresh tomatoes from Mexico were being, or were likely to be, sold in the United States at less than fair value. Fresh Tomatoes From Mexico, 61 Fed. Reg. 56,608, 56,608 (Dep't of Commerce Nov. 1, 1996) (notice of preliminary determination of sales at less than fair value and postponement of final determination).

That same day, pursuant to 19 U.S.C. § 1673c(c)(1) (1994), the Department concluded "that extraordinary circumstances [were] present," and executed a suspension agreement with growers and/or exporters of fresh tomatoes from Mexico who "accounted for substantially all . . . of the subject merchandise imported into the United States." Fresh Tomatoes From Mexico, 61 Fed. Reg. 56,618, 56,618 (Dep't of Commerce Nov. 1, 1996) (suspension of antidumping investigation). The agreement set forth an established "reference price," which was a minimum price at which the signatories could sell subject merchandise in the United States. Renewal agreements followed in 2002, 2008, and 2013, further suspending final determinations by the Department and the ITC. See Fresh Tomatoes From Mexico, 67 Fed. Reg. 77,044 (Dep't of Commerce Dec. 16, 2002) (suspension of antidumping investigation); Fresh Tomatoes From Mexico, 73 Fed. Reg. 4,831 (Dep't of Commerce Jan. 28, 2008) (suspension of antidumping investigation); Fresh Tomatoes From Mexico, 78 Fed. Reg. 14,967 (Dep't of Commerce Mar. 8, 2013) (suspension of antidumping investigation), and accompanying 2013 Suspension Agreement (collectively, "2013 Suspension Agreement").

With respect to the 2013 Suspension Agreement (the agreement now challenged by plaintiff pursuant to its Rule 56.2 Motion), the Department concluded "that the 2013 Suspension Agreement w[ould] eliminate completely the injurious effect of exports to the United States of the subject merchandise and prevent the suppression or undercutting of price levels of domestic fresh tomatoes by imports of that merchandise from Mexico." 2013 Suspension Agreement, 78 Fed. Reg. at 14,968. Commerce "also determined that the 2013 Suspension Agreement [was] in the public interest and [that the agreement could] be monitored effectively, as required under" 19 U.S.C. § 1673c(d)(2) (2006). 2013 Suspension Agreement, 78 Fed. Reg. at 14,968.

On April 5, 2013, the FTE, "a trade association representing growers and first handlers of the domestic like product" in the United States, commenced this action pursuant to 28 U.S.C. § 1581(c) (2006), challenging the Department's determination to suspend the antidumping investigation on fresh tomatoes from Mexico. Summons ¶¶ 1, 2 (ECF Dkt. No. 1). On August 30, 2013, plaintiff submitted its motion for judgment on the agency record. Rule 56.2 Mot. The Department opposes plaintiff's Rule 56.2 Motion and asks that its determination to suspend the investigation and enter into the 2013 Suspension Agreement be sustained. Def.'s Mem. in Opp'n to Pl.'s Rule 56.2 Mot. for J. on the Agency R. 1–2 (ECF Dkt. No. 42). Defendant-intervenors, CAADES Sinaloa, A.C., Consejo Agrícola de Baja California, A.C., Asociación Mexicana de Horticultura Protegida, A.C., Unión Agrícola Regional de Sonora Productores de Hortalizas Frutas y Legumbres, and Confederación Nacional de Productores de Hortalizas (collectively, "defendant-intervenors"), which "are 'association[s,] a majority of the members of which are producers, exporters, or importers of' fresh tomatoes from Mexico," join in opposition to plaintiff's Rule 56.2 Motion. Consent Mot. to Intervene as of Right as Def.-Ints. 1 (ECF Dkt. No. 15) (quoting 19 U.S.C. § 1677(9)(A) (2006)).

Following the filing of the parties' respective response briefs to plaintiff's Rule 56.2 Motion, the FTE filed a motion to strike portions of defendant-intervenors' brief pursuant to USCIT Rules 12(f) and 81(m).  Rule 12(f) directs that a motion to strike be granted when a party's pleading contains "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  USCIT Rule 12(f) (2014).  Rule 81(m) directs the court to disregard "[a] brief or memorandum [that contains] burdensome, irrelevant, immaterial, pejorative [or] scandalous matter."  USCIT Rule 81(m) (2014).  Plaintiff seeks to exclude from the record Exhibits 2, 3, 4, 5, 8, 13, 14, and 16 of defendant-intervenors' brief and the other related portions of the brief that are based on information contained within these exhibits.  The exhibits and arguments that plaintiff seeks to exclude from the record all pertain to defendant-intervenors' contention that plaintiff is judicially estopped from offering arguments in this Court that are contrary to arguments it offered before Commerce and the ITC during earlier proceedings.

## DISCUSSION

### I.   MOTION TO STRIKE

As a general rule, motions to strike are "disfavored" by courts and considered "extraordinary" remedies.  *See, e.g.*, *Diamond Sawblades Mfrs. Coal. v. United States*, 31 CIT 1249, 1252 (2007); *United States v. UPS Customhouse Brokerage, Inc.*, 30 CIT 808, 820, 442 F. Supp. 2d 1290, 1302 (2006); *Elkem Metals Co. v. United States*, 27 CIT 1758, 1760, 297 F. Supp. 2d 1347, 1350 (2003); *Hynix Semiconductor, Inc. v. United States*, 27 CIT 1469, 1470 (2003); *Acciai Speciali Terni S.p.A. v. United States*, 24 CIT 1211, 1217, 120 F. Supp. 2d 1101, 1106 (2000); *Jimlar Corp. v. United States*, 10 CIT 671, 673, 647 F. Supp. 932, 934 (1986).  Thus, such motions "should be granted only in cases where there has been a flagrant disregard of

the rules of court." *Jimlar*, 10 CIT at 673, 647 F. Supp. at 934 (citing *Application of Harrington*, 392 F.2d 653, 655 (C.C.P.A. 1968)). As a result, "courts will not grant motions to strike unless the brief demonstrates a lack of good faith, or that the court would be prejudiced or misled by the inclusion in the brief of the improper material." *Id.* "[T]his Court has broad discretion in evaluating [whether to grant or deny] motions to strike." *Hynix Semiconductor*, 27 CIT at 1470. However,

> "[t]here is no occasion for a party to move to strike portions of an opponent's brief (unless they be scandalous or defamatory) merely because he thinks they contain material that is incorrect, inappropriate, or not a part of the record. The proper method of raising those issues is by so arguing, either in the brief or in a supplemental memorandum, but not by filing a motion to strike."

*Acciai Speciali Terni*, 24 CIT at 1217, 120 F. Supp. 2d at 1106 (quoting *Dillon v. United States*, 229 Ct. Cl. 631, 636 (Ct. Cl. 1981)).

Generally speaking, this Court's authority for judicial review is confined to the administrative record. *Kerr-McGee Chem. Corp. v. United States*, 21 CIT 1179, 1183, 985 F. Supp. 1162, 1165 (1997) (citation omitted) ("For purposes of judicial review, the Court may consider only materials contained in the administrative record."); *Neuweg Fertigung GmbH v. United States*, 16 CIT 724, 726, 797 F. Supp. 1020, 1022 (1992) ("The case law of this court is very clear that the administrative record 'is limited to the information that was presented to or obtained by the agency making the determination during the particular review proceeding for which section 1516 authorizes judicial review.'" (quoting *Beker Indus. Corp. v. United States*, 7 CIT 313, 316 (1984)). A party is free, however, "'to offer whatever *legal* arguments it chooses.'" *Hynix Semiconductor*, 27 CIT at 1471 (quoting *Koyo Seiko Co. v. United States*, 21 CIT 146, 158, 955 F. Supp. 1532, 1544 (1997)).

## II. JUDICIAL ESTOPPEL

"[J]udicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). The judicial estoppel doctrine has been set forth by the United States Supreme Court as follows: "'[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *Id.* at 749 (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). In other words, the rule of "[j]udicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000) (citing *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 605 (9th Cir. 1996)). This Court's analysis of whether judicial estoppel is available is guided by three factors identified by the Supreme Court, which should "typically inform the decision whether to apply the doctrine in a particular case": (1) whether the "party's later position [is] clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 743, 750–51 (citations omitted) (internal quotation marks omitted). Further, "[j]udicial estoppel applies just as much when one of the tribunals is an administrative agency as it does when both tribunals are courts." *Trs. in Bankr. of N. Am. Rubber Thread Co., Inc. v. United States*, 593

F.3d 1346, 1354 (Fed. Cir. 2010) (citing *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1377 (Fed. Cir. 2000) ("The [judicial estoppel] doctrine also applies to administrative proceedings in which a party obtains a favorable order by making an argument that it seeks to repudiate in a subsequent judicial proceeding.")).

**III.    THE PARTIES' ARGUMENTS**

By means of its motion to strike, plaintiff contends that "[j]udicial review is limited to the administrative record developed by the agency." Pl.'s Mot. to Strike 2 (citing 19 U.S.C. § 1516a(a)(2) (2006)). "Only in 'exceptional circumstances,'" plaintiff argues, "'such as where a document was considered by the agency and not included in the record,' [may the] Court consider information that was not included in the agency record filed with the [C]ourt." Pl.'s Mot. to Strike 2 (quoting *Kerr-McGee*, 21 CIT at 1183, 985 F. Supp. at 1165). The determination being challenged by plaintiff in the present action is the 2013 Suspension Agreement, and "[d]efendant-[i]ntervenors' submission contains several exhibits [and references to, or arguments based on those exhibits,] that were not listed in the index to the agency record as filed by the agency and that cannot fairly be considered part of the administrative record." Pl.'s Mot 3. Thus, plaintiff argues that, because "many of the exhibits attached to [d]efendant-[i]ntervenors' [b]rief were not part of the agency record, and much of that brief relies on those exhibits and other information that was not part of the agency record," the court must exclude this material from defendant-intervenors' submission. Pl.'s Mot. to Strike 1.

For their part, defendant-intervenors object to plaintiff's motion to strike, and assert that the extra-record material it has presented to the court demonstrates that "[t]he positions [for which p]laintiff advocates in this proceeding are directly contrary to the positions [plaintiff] has

consistently taken in all prior related proceedings," and plaintiff is thus, "barred from taking a contrary position now by the doctrine of judicial estoppel." Def.-Ints.' Resp. to Pl.'s Mot. to Strike 1. Defendant-intervenors argue that the exhibits and references thereto, that plaintiff seeks to strike, relate to the inconsistency of plaintiff's past positions which the court may consider in this proceeding. Def.-Ints.' Resp. to Pl.'s Mot. to Strike 1.

Commerce says that it "will rely on the [c]ourt's discretion as to whether [the] FTE's motion to strike should be denied." Def.'s Resp. to Pl.'s Mot. to Strike Portions of the Def.-Ints.' Br. 4 (ECF Dkt. No. 49) ("Def.'s Resp. Br. to Mot. to Strike"). Taking a middle-ground, however, defendant further argues that (1) the "FTE is not estopped from challenging the 2013 [S]uspension [A]greement solely because its current position differs from the position it adopted in related preceding segments of the proceeding covering fresh tomatoes from Mexico," and (2) "defendant-intervenors are not prohibited from referring to, or relying on, public information for purposes of making a judicial estoppel argument." Def.'s Resp. Br. to Mot. to Strike 3.

## IV.   ANALYSIS

The court finds that plaintiff's motion to strike lacks merit. Remarkably, although plaintiff seeks to strike exhibits and assertions from defendant-intervenors' brief related to the judicial estoppel argument, plaintiff's motion to strike contains no discussion or even reference to this argument. Aside from plaintiff's generalized assertions that certain exhibits and sentences must be stricken from defendant-intervenors' brief because they were not part of the administrative record, plaintiff sets forth no further basis as to why the claim of judicial estoppel is otherwise legally insupportable in this case based on any of the factors set forth by the Supreme Court in *New Hampshire v. Maine*.

Defendant-intervenors, however, contend that the present case is ripe for the application of judicial estoppel on the grounds that, the positions for which plaintiff advocates in this proceeding relating to the 2013 Suspension Agreement, are directly contrary to positions plaintiff has taken in prior proceedings with respect to the previous suspension agreements. In making their case, defendant-intervenors rely upon the material that plaintiff seeks to strike.

Although it may be true that defendant-intervenors' brief contains arguments about, and references to, information that is not part of the administrative record, that does not necessitate striking any portions of it from the record. First, plaintiff has failed to make any showing that it is entitled to have defendant-intervenors' material struck based on USCIT Rules 12(f) and 81(m). That is, plaintiff has failed to demonstrate that defendant-intervenors' submission was made in bad faith or includes material that is scandalous or inflammatory, "that the contested references are sufficiently irrelevant, [redundant, or] immaterial," or that the filing would prejudice or mislead the court in such a way that the drastic remedy requested of striking this material is warranted. *Jimlar Corp.*, 10 CIT at 673, 647 F. Supp. at 934; *see UPS Customhouse Brokerage*, 30 CIT at 821, 442 F. Supp. 2d at 1302; *Elkem Metals*, 27 CIT at 1760–61, 297 F. Supp. 2d at 1350.

More importantly, it is only by means of the documents plaintiff seeks to strike that the court will have the facts necessary to rule on defendant-intervenors' judicial estoppel argument. *See Global Computer Enters. v. United States*, 88 Fed. Cl. 52, 62 (Fed. Cl. 2009). The purpose of restricting a reviewing court to the record completed by an administrative agency is that the court's purpose is to decide the legality of an agency determination based on the facts before the agency when it made the determination. *See Kerr-McGee*, 21 CIT at 1181, 985 F. Supp. at 1163–64; S. REP. NO. 96-249 at 247–48 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 633

(emphasis added) ("Judicial review of determinations . . . would proceed *upon the basis of information before the relevant decision-maker at the time the decision was rendered* including any information that has been compiled as part of the formal record."). Here, however, neither the ITC nor the Department engaged in a discussion, or made a determination, with respect to judicial estoppel. By its nature, defendant-intervenors' judicial estoppel argument is being made for the first time before this Court. Thus, neither the ITC nor Commerce has previously considered the parties' positions on the matter, nor have they considered any evidence relating to judicial estoppel arguments. That being the case, the general rule that this Court must only consider the record compiled by the agency has no application here. Moreover, although the court does not reach the merits of defendant-intervenors' judicial estoppel arguments at this time, the court recognizes that the challenged exhibits are precisely the type of evidence a party must produce in order to demonstrate that the doctrine of judicial estoppel prevents an adversary from making certain arguments. As an example, Exhibits 2, 4, and 5 that plaintiff seeks to strike, are comments submitted by plaintiff to the Department that include plaintiff's positions on the International Trade Administration's proposed suspension agreements on fresh tomatoes from Mexico in 1996, 2002, and 2008. Thus, if defendant-intervenors' judicial estoppel arguments are indeed legally valid, then those arguments can only be made by reference to the exhibits defendant-intervenors proffer. *See Acciai Speciali Terni*, 24 CIT at 1217, 120 F. Supp. 2d at 1107.

**CONCLUSION and ORDER**

Based on the foregoing, plaintiff's motion to strike Exhibits 2, 3, 4, 5, 8, 13, 14, and 16 to defendant-intervenors' brief and the references thereto is denied. Further, as a result of the

court's order, Defendant-Intervenors' Motion for Leave to File a Response to Defendant's Response to Plaintiff's Motion to Strike Portions of Defendant-Intervenors' Brief (ECF Dkt. No. 50) is also denied.

    IT IS SO ORDERED.

Dated:    April 11, 2014
           New York, New York

                                                      /s/ Richard K. Eaton
                                                        Richard K. Eaton